RICHARD MONTAGUE, Plaintiff in Error, *v.* EDWARD N. MITCHELL, REUBEN P. LAYTON, JOHN B. YOUNG, and SAMUEL L. CHURCH, Defendants in Error.

ERROR TO WINNEBAGO COUNTY COURT.

A person may be a witness where his interests are equally balanced. The liability of the witness, and not his responsibility, is the test of his interest.

If the holders of a note accept a consideration from the maker, for extending the time of payment, a surety to such note will be discharged; and if a judgment shall be entered against the surety, without notice to him, upon a cognovit, he may obtain relief in equity.

THIS bill of complaint in chancery was filed April 5, 1858. It states that on the seventh of August, 1857, the defendant Young applied to the defendants Kitchel & Layton, then bankers at Rockford, for the loan of $200. They agreed to lend him the money, deducting their usual rate of interest, upon his getting a surety.

Young proposed Montague for surety, and Kitchel & Layton assented, and filled out one of their printed forms for notes for the $200, and delivered it to Young, for him to obtain the signature of Montague, they well knowing that the intended loan was for the benefit of Young, and that complainant had no interest in it.

Young affixed his own signature to the note, and then went out and obtained Montague to sign it as surety, and shortly returned and delivered the note to Kitchel & Layton, and received the sum agreed upon it.

When the note fell due, Young, without the consent or knowledge of Montague, applied to Kitchel & Layton for delay, and thereupon it was agreed by and between them that Kitchel & Layton should give Young time for the payment of the note for thirty days from the time the same fell due, in consideration of seven dollars; Young paid them the $7, and they received it, but no indorsement of the $7 was made on the note.

At the end of the thirty days, Young, without the knowl-

edge or consent of Montague, obtained another delay of thirty days, and paid $7 for it.

Montague was only surety on the note, and had no knowledge of either agreement for extension.

The note was accompanied by a warrant of attorney to confess judgment; and Kitchel & Layton, on February 1, 1859, caused judgment to be entered thereon, in the Winnebago County Court, for $200, specified in the note, and an attorney's fee of $20, provided for in the warrant, making $220 besides costs.

An execution has been issued on the judgment, and the sheriff threatens to levy on Montague's property.

Defendants Kitchel & Layton to answer without oath, and Young and Church under oath.

Prayer that judgment may be set aside as to Montague, and that he be discharged from the note, and for injunction against execution.

Church appeared, and obtained time to answer.

Kitchel & Layton filed their answer. They admit their partnership as bankers at Rockford during 1857, and that Young applied to them for a loan of about $200.

They say that Young & Montague were partners in the lumber trade at Rockford, where they, Young & Montague, resided, and in connection with other persons as partners, had been in that business for a long time. Previous to August 7, they, Kitchel & Layton, had loaned to Young and said Montague considerable sums of money at different times; and that at the time Young applied for the $200, they understood and believed the note was to be made for the joint benefit of Young and said Montague as such partners.

Defendants agreed to loan the money, and filled out a note with a warrant of attorney attached, a copy of which is annexed to answer, and delivered it to Young for the purpose of getting the signature of said partner thereto; but they deny that Young suggested Montague as a person whom he might probably get to sign the note as surety, or that the note was signed by him as surety. The note was delivered to them signed by Young and said Montague as joint makers, and they delivered Young the money agreed upon.

Defendants are informed and believe that the loan was made for the benefit of Young and said Montague, and that the proceeds were used to cancel an indebtedness then existing against them.

Previous to August, defendants had full knowledge of the copartnership between Young & Montague, and had loaned them different sums of money to carry on the lumber business.

Defendants deny that they agreed to extend the time of payment of the note, or that they received of Young money as a consideration for any such agreement, or that the note was extended for any definite time.

Defendants delayed the collection of the note until Feb. 1, 1858, at the earnest request of Young & Montague, they stating that they would pay it in a short time.

Between the note falling due and the judgment, defendants frequently urged the parties for payment, and during October, November and December, they received several letters from Young, two of them inclosing about $7 each, urging them not to sue the note, and promising payment in a few days.

Relying upon the promises of said Young & Montague, they neglected to prosecute the note; but they deny that such neglect was occasioned by an agreement made by Young with them not to sue the same for any given length of time, or upon any agreement to give time as charged.

On said Feb. 1, 1858, they caused judgment to be entered on the note for $220, including an attorney's fee of $20, and execution was issued thereon as stated.

Since the maturity of the note, and after Jan. 1, 1858, Young fully indemnified Montague against any and all liability by reason of the note.

Replication was filed.

The parties agree that the judgment was entered by confession on a note and warrant of attorney, of which a copy is attached to the answer, at the time and in the manner stated, and that an execution was issued as stated.

The deposition of the defendant John B. Young was taken, who proved the allegations of the bill.

At September term, 1859, before ANSON S. MILLER, Judge

of the County Court, an order was entered, reciting that the cause had been submitted on a motion to suppress the deposition of Young, on the ground that he was interested in the event of the suit; that the motion was reserved to the hearing, and the cause having been heard upon bill, answer and proofs, it was ordered that the deposition be suppressed for the cause aforesaid, and the complainant excepts; and it was decreed that the bill be dismissed.

The errors assigned are, that the court ought not to have set aside the deposition of John B. Young, and the decree ought to have been in favor of Montague, for the relief prayed.

BURNAP & HARVEY, for Plaintiff in Error.

The giving of time by Kitchel to the principal in the note and warrant of attorney in question, Young, without the consent of the surety, Montague, discharges Montague. *Warner v. Crane*, 20 Ill. 148; 1 Story's Equity Jur. 351 and 326; *People v. McHatton*, 2 Gilm. 688.

Young was a competent witness, and his deposition ought not to have been suppressed.

He was liable for the whole debt by force of the judgment; and he would not be less liable by Montague being discharged from the judgment. 1 Greenl. Ev. 488, sec. 386, p. 491, sec. 390; 1 Stark. Ev. 105.

If Young had an interest at all, that interest was balanced, and a witness whose interest is balanced equally, is competent. 1 Greenl. Ev. 522, sec. 420, p. 203, sec. 399; *Muchmore v. Jeffers*, 25 Ill. 199; *Freeman's Bank v. Rollins*, 1 Shepley, 205; *Sloo v. State Bank of Illinois*, 1 Scam. 428, 444.

A judgment may be set aside as to one, and have the judgment stand as to the other. 1 Scam. 444.

J. M. WRIGHT, for Defendants in Error.

John B. Young was not a competent witness for the complainant, Montague, and the exclusion of his testimony was no error; it appears by the testimony that said Young had indemnified the complainant against the result of this suit. 24 Ill. 31; 5 Conn. 258; 2 Conn. 269; 1 Kelly, 258.

Was the complainant a surety as to Kitchel & Layton? Where the question between the creditor and debtor arises, whether the debtor is not a surety, the question is determined by the contract between the creditor and such debtor, and that every joint maker of a note must be taken to be a principal and not a surety as respects the payee of the note, unless the payee has consented to receive the maker, making such claim, as surety. *Manley* v. *Baycot,* 18 Eng. Law & Eq. 351; *Strong* v. *Foster,* 33 Eng. Law & Eq. Rep.; Story on Bills of Exchange, etc., 432; 75 Eng. Com. Law Rep. 56; 5 Maryland Rep. 399.

Caton, C. J. We think the court erred in holding Young incompetent on account of interest in the event of the suit. Technically, we think, his interests were equally balanced, whatever his feelings or wishes may have been. If the injunction was made perpetual, then he had to pay the whole of the judgment. If it was dissolved, and Montague had to pay the judgment, then he was responsible over, and must pay the amount to him. And we do not see how this is changed in a legal point of view, because Young may have given security to Montague to indemnify him for whatever he might pay on the note for which the judgment was rendered. The question presented in determining the interest of a witness, is one of liability, and not of responsibility. In considering that, we must assume that the witness will be able to pay what he owes; or at least his liability is the same, whether he be able to pay or not. And it is the question of liability which must determine the competency. But it was insisted, that he was interested to the extent of the costs in this cause, at any rate. We do not see how this is so. We cannot appreciate how, in any event, Young could be liable for the costs in this cause. He is not a party to it, and has never agreed to pay the costs, so far as we know, nor has he ever agreed that they may be paid out of the property placed in the hands of the trustee, to secure Montague on the note.

We think Young was a competent witness, and this settles the matter, for his testimony shows abundantly that Montague

was surety on the note, and so known and accepted by the defendants. That they twice extended the time of payment for a consideration of three per cent. per month, in cash, paid by the principal, and that the appearance of Montague was entered and judgment confessed by an attorney, under the power of attorney attached to the note, without any notice to Montague, or any opportunity to him to make the defense at law. If the judgment debtors suppose the security given to Montague is worth anything, which, from the proofs in this cause, is very doubtful, it may be that, by a proper application to a court of equity, they might be subrogated to the rights of Montague, as to that security. We think the complainant was entitled to a perpetual injunction to protect him. The decree is reversed, and a decree here enjoining the collection of the judgment from the complainant.

*Decree reversed.*