## C. Edward Peterson v. W. H. C. Stege.

1. SURETYSHIP—*How Proven.*—Where a father and son signed a note together, and the proceeds were paid to the son, and when the note became due the son objected to the making of a new note because his step-mother did not want his father to sign any more notes for him, *it was held* that parol proof that one joint maker of a note is surety for the other is competent; that the father was a surety, and that the payee had notice.

2. SURETY—*How Released.*—A valid agreement for the extension of the time of payment of a note releases a surety thereon unless he assents to the extension, if the payee had notice that he signed as surety.

Assumpsit, on notes.    Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding.    Heard in this court at the October term, 1896.    Reversed and remanded.    Opinion filed November 19, 1896.

ROSENTHAL, KURZ & HIRSCHL, attorneys for appellant.

PINCKNEY & TATGE, attorneys for appellee.

MR. JUSTICE GARY DELIVERED THE OPINION OF THE COURT.
This is an action by the appellee upon two promissory notes, each for the sum of $1,500, signed by the appellant and his son William F. Peterson, payable to, and discounted by, the Chicago City Bank.

The appellee stands in the shoes of the bank—has no greater right than the bank could enforce.

One note is dated December 22, 1893, payable in ninety days, and the other January 30, 1895, payable in six months.

The defense is, that the bank had notice that the appellant was but surety for his son on each note, and that without his knowledge, the bank extended to the son, the time of payment on each note.

From the testimony of the president and the cashier of the bank, it appears that the first note was brought to the bank by the son, already signed, and was discounted by the

bank in the ordinary course of business.  When it became
due, the son wanted an extension, and the president told
him to get his father to sign a new note, and the son said
that his step-mother objected to his father signing any more
notes for him.  The son then said, "Is there some other
way for me to fix it to get the extension?"

So the bank took a new note from the son, dated March
24, 1894, payable ninety days after date, reciting the de-
posit of the original note as collateral.

There were several renewals of both notes in substance
in the same manner, and the son paid the interest in ad-
vance upon each renewal.

The proceeds of the discounts were put to the credit of
the son in his account with the bank; it is admitted that he
got the money.

The consideration of the notes going only to the son was,
at least, a circumstance tending to show notice to the
bank that the appellant was, as between his son and him-
self, only a surety.  Cummings v. Little, 45 Me. 183.

When, added to that, the bank was told as a reason for
not asking the appellant to sign a new note, that the step-
mother objected to the appellant signing any more notes
for the son, the notice to the bank was clear that the appel-
lant was only a surety.

Parol proof that one joint maker was surety for the
other, is competent.  Ward v. Stout, 32 Ill. 399.

That fact being incontestible, and notice to the bank
proved, the taking of the new notes, and receiving in ad-
vance the interest for the time they had to run, was an
extension of the credit to the son which discharged the appel-
lant, unless he assented to the extension, of which there is
no proof.  Danforth v. Semple, 73 Ill. 170.

The judgment against the appellant is reversed and the
cause remanded.